IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| RMDI, LLC, a Utah limited liability company and ZDF IMPORT/EXPORT, LLC d/b/a Robinson Armament Co., a Utah limited liability company,<br><br>      Plaintiffs,<br><br><br><br>          vs.<br><br><br>REMINGTON ARMS CO., INC., a North Carolina corporation, BUSHMASTER FIREARMS INT'L, LLC, a Maine limited liability company, ROCK RIVER ARMS, INC., an Illinois corporation, and MAGPUL INDUSTRIES CORP., a Colorado corporation,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:10-CV-29 TS |

This matter is before the Court on Motions for Summary Judgment filed by Defendants

Remington Arms Co, Inc., Bushmaster Firearms Int'l, LLC, Rock River Arms, Inc., and Magpul

Industries Corp (collectively, "Defendants").[1]  Defendants' Motions seek a ruling that United

---

[1]Docket Nos. 98, 100, 107, and 165.

States Patent No. 7,596,900 ("the '900 Patent") is invalid under 35 U.S.C. § 102(g).  Plaintiffs

have filed their own Motion for Partial Summary Judgment, seeking dismissal of Defendants' §

102(g) defense.[2]  For the reasons discussed below, the Court will grant Defendants' Motions for

Summary Judgment and deny Plaintiffs' Motion.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine

issue of material fact and it is entitled to judgment as a matter of law.[3]  In considering whether a

genuine issue of material fact exists, the Court determines whether a reasonable jury could return

a verdict for the nonmoving party in the face of all the evidence presented.[4]  The Court is

required to construe all facts and reasonable inferences in the light most favorable to the

nonmoving party.[5]

## II.  STATEMENT OF FACTS

Plaintiff RMDI is the owner by assignment of all right, title, and interest in and to the

'900 Patent.  Plaintiff Robinson Armament is the exclusive licensee of all rights to practice the

---

[2]Docket No. 139.

[3]FED. R. CIV. P. 56(a).

[4]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

claims of the '900 patent.  Plaintiffs bring this action against Defendants asserting that certain

firearms (the "Accused Products") infringe certain claims of the '900 Patent.[6]

      For purposes of these Motions, Defendants have accepted Plaintiffs' assertion of

infringement.  Defendants argue that the '900 Patent is invalid under 35 U.S.C. § 102(g) because

of Rock River's prior development of the allegedly infringing LAR-8 rifle.  It is undisputed that

Rock River conceived of and reduced to practice its LAR-8 rifle prior to Plaintiffs' reduction to

practice of the invention of the '900 patent.  Plaintiffs argue, however, that Rock River

suppressed or concealed its invention.  The following facts are relevant to the issue of

suppression or concealment.

      By July 2001, Rock River first produced drawings related to the LAR-8 rifle.  These

drawings were further revised over the next several months and, from these revised drawings,

sample parts were ordered.  Once the sample parts were ordered, Rock River continued to

measure, test, and refine them.  By November 2001, Rock River ordered parts for a plastic

LAR-8 prototype, and completed assembly of that prototype.  Upon assembly, Rock River

checked for look, function, and whether the parts mated well together.

      From December 2001 to March 2002, Rock River continued to refine component

parts and revise the drawings for the LAR-8.  In May 2002, Rock River ordered and received

metal components to replace the plastic components in the plastic prototype.  In June 2002, Rock

---

[6]Specifically, Plaintiffs assert that all of the Accused Products infringe claims 1, 3, 6, 7, 8, 10, 11, 18, 24, and 25 of the '900 Patent.

3

River completed construction and testing of a metal LAR-8 prototype.  This "Test 1" rifle was assembled and tested that same month.

In October 2002, Rock River ordered and received additional prototype lower receivers for the LAR-8.  In November 2002, Rock River conducted endurance testing on the "Test 2" and "Test 3" rifles.  Rock River fired approximately 10,000 rounds through the prototype rifles.  Upon completion of the prototype testing, Rock River began the development phase of having the LAR-8 upper receiver and lower receiver made from aluminum forgings.  Aluminum forgings provide certain strength benefits.  This process took five to seven months.  Also in November 2002, Rock River began work on a muzzle brake for the LAR-8 rifle.

In December 2002, Rock River sent sample crush washers, extractor pins, and ejectors for heat treating and hardening.  Once returned, Rock River tested and refined these parts over the span of several weeks.

In December 2002 and January 2003, Rock River began working on developing and testing anodized parts for the LAR-8 rifle.  It took several weeks to receive, test, and refine the anodized parts.

Beginning in December 2002, Rock River ordered upper and lower receiver forging dies for the LAR-8 rifle.  In January 2003, Rock River ordered 6,000 upper receiver forgings and 6,000 lower receiver forgings.  It took approximately five months from the date of order before Rock River received the first set of lower receiver forgings, and approximately seven months for the upper receiver forgings.

In January 2003, Rock River began developing rear sights for the LAR-8 rifle in order to achieve long-range sight adjustment.  This process took nearly a year to complete.

In March 2003, Rock River ordered a magazine well broach, which it received in late July 2003.  The broach was used to machine the interior surfaces of the magazine well of the LAR-8 lower receiver forging, including the machining of a channel into the magazine well of the lower receiver forging to receive the FAL-style tabbed magazine.  The process of designing a broach took several months.

In May 2003, Rock River ordered several dies to cast several LAR-8 rifle parts, including the magazine catch, bolt stop button, receiver block, trigger, and hammer.  It took 8-10 weeks to make the dies and then make sample parts from the dies.  During this time, Rock River was developing a new two-stage trigger for the LAR-8.  Also during this time, Rock River was working on the proper angles on the magazine catch and the magazine release pin to permit the FAL magazine to release properly from the forged magazine well.

In May 2003, Rock River worked on creating dies for the manufacture of the charging handle of the LAR-8 rifle.  This process took several weeks.  That same month, Rock River received and tested barrel extensions.

In June 2003, Rock River began the development and design of the gas rings to use with the LAR-8 rifle to prevent gas blow-by.

In June 2003, Rock River met with Bushmaster to show them a LAR-8 rifle prototype. By August 2003, Rock River had completed a rifle to go to Bushmaster for testing and evaluation.  Rock River worked with Bushmaster to prepare stampings to mark the LAR-8 lower

receivers with the Bushmaster logo.  On July 16, 2003, Bushmaster requested Continental

Machine Tool Co., Inc. to seek a Bureau of Alcohol, Tobacco and Firearms ("BATF") variance

to mark the LAR-8 lower receivers with a "BAR" serial number designation.  It took several

months to obtain this BATF variance before the lower receivers could be marked with the new

serial number designation.

From June 2003 to November 2003, Rock River received, tested, and refined various

components, including the ejector springs, extractor springs, actions springs, and bolt catch

springs for the LAR-8 rifle.  The process of receiving, testing, and refining these various parts

took several months to complete.

On November 25, 2003, Rock River delivered a prototype LAR-8 rifle to Bushmaster.

By the end of January 2003, Bushmaster was satisfied that Rock River had worked out any pre-

production bugs and that the LAR-8 was a viable product.

Between December 2003 and February 9, 2004, Rock River prepared and filed a patent

application directed to the LAR-8.

In February 2004, Rock River began selling the accused LAR-8 rifles to Bushmaster, and

Bushmaster displayed the firearm under its own name (the Bushmaster .308) at the 2004

SHOT Show in Las Vegas, Nevada.  Bushmaster thereafter resold the firearm.

On May 22, 2007, Rock River obtained its patent directed to the LAR-8 rifle, the '462

Patent.

6

III.  DISCUSSION

Defendants seek summary judgment that the '900 Patent is invalid pursuant to 35 U.S.C. § 102(g), while Plaintiffs seek judgment on Defendants' § 102(g) claim.   Section 102(g)(2) states, in pertinent part: "A person shall be entitled to a patent unless . . . before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."  "Section 102(g) operates to ensure that a patent is awarded only to the 'first' inventor in law."[7]  Section "102(g) may be asserted as a basis for invalidating a patent in defense to an infringement suit."[8]  "[I]f a patentee's invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention, § 102(g) will invalidate that patent."[9]

The Federal Circuit has developed a shifting burdens test when challenging a patent under § 102(g).

> [T]he challenger of the validity of a patent must establish prior invention by clear and convincing evidence.  If the challenger does so, the burden of production shifts to the patentee to produce evidence sufficient to create a genuine issue of material fact as to whether the prior inventor abandoned, suppressed, or concealed the invention.  If the patentee carries this burden of production, the challenger may rebut the evidence of abandonment, suppression, or concealment, with clear and convincing evidence to the contrary.[10]

---

[7]*Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1035 (Fed. Cir. 2001).

[8]*Id.*

[9]*Id.*

[10]*Dow Chem. Co. v. Astro-Valcour, Inc.*, 267 F.3d 1334, 1339 (Fed. Cir. 2001) (citing *Apotex*, 254 F.3d at 1037-38).

7

There is no dispute here that the LAR-8 rifle was conceived of and reduced to practice prior to RMDI's reduction to practice of the invention of the '900 Patent. Further, for the purposes of this Motion, Defendants have accepted Plaintiffs' assertion of infringement. Therefore, the issues remaining are whether Plaintiffs have presented evidence creating a genuine issue of material fact as to whether Rock River abandoned, suppressed, or concealed the LAR-8 rifle and, if so, whether Defendants have rebutted the evidence of abandonment, suppression, or concealment, with clear and convincing evidence to the contrary.

## A.   ABANDONMENT, SUPPRESSION, OR CONCEALMENT

"There are two types of suppression or concealment: cases in which the inventor intentionally suppresses or conceals his invention, and cases in which a legal inference of suppression or concealment can be drawn based on an unreasonable delay in making the invention publicly known."[11]   Plaintiffs argue that they have presented evidence showing both intentional suppression or concealment and evidence establishing a legal inference of suppression or concealment.

### 1.   *Intentional Suppression or Concealment*

Plaintiffs first argue that there is evidence of intentional suppression or concealment. "Intentional suppression occurs when an inventor 'designedly, and with the view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public.'"[12] "Intentional suppression, however, requires more than the passage of time. It requires evidence

---

[11]*Flex-Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358 (Fed. Cir. 2006).

[12]*Id*. (quoting *Paulik v. Rizkalla*, 760 F.2d 1270, 1273 (Fed. Cir. 1985) (en banc)).

that the inventor intentionally delayed filing in order to prolong the period during which the invention is maintained in secret."[13]

Plaintiffs argue that Rock River intentionally suppressed or concealed the LAR-8 rifle by delaying filing a patent application.  Plaintiffs point to a single statement in the deposition of Lester Larson, Rock River's 30(b)(6) witness, in support of this contention.  In his deposition, Mr. Larson made the following statement:

> A. In my eyes then to apply for a patent is -- is for an order of protection for 10 years on something that has been shown in public, and we have not shown this project to anybody other than the people who were involved in it at that time. And if we didn't take this project to market for another five years, that would give me -- I would actually lose time as far as protection on a patent, so to show something before it's ready to truly go to market, why would you do that?  And that's just in -- in my world. . . .
> Q. So your motivation was to wait until you were ready to go to the market --
> A. Try to get --
> Q. -- and then file?
> A. Try to get it as close as you can because otherwise you will lose that 10-year or whatever it is worth of protection. You know, I don't want -- I don't want to give up five years on something and have somebody come in and copy it, you know, when it's too late.[14]

Plaintiffs argue that this statement is a "'smoking gun' confession" showing intentional suppression.[15]  The Court disagrees.  This single statement must be considered in the context of Mr. Larson's entire deposition and the other evidence in the record.  Throughout his deposition, Mr. Larson testified that Rock River did not intentionally delay filing a patent application.[16]

---

[13]*Fujikawa v. Wattanasin*, 93 F.3d 1559, 1567 (Fed. Cir. 1996).

[14]Docket No. 42, Ex. C at 169:19-171:3.

[15]Docket No. 169, at 7.

[16]Docket No. 42, Ex. C at 171:10-13.

Indeed, Mr. Larson testified repeatedly that Rock River was continually working on the LAR-8 rifle and did not stop working on the LAR-8 until it was ready to be brought to market.[17]  This is supported by the other evidence in the record, discussed above, which demonstrates that Rock River took great efforts to complete work on the LAR-8 rifle to ultimately bring that product to market.  Without any further evidence to support its argument that Rock River intentionally suppressed or concealed its invention, the Court finds that Plaintiffs have failed to raise a genuine issue of material fact regarding intentional suppression or concealment.

Plaintiffs argue this case is similar to *Lutzker v. Pelt*.[18]  Putting aside, for the moment, Defendants' arguments that *Lutzker* is inapplicable, the Court finds it to be clearly distinguishable.  *Lutzker* involved an interference proceeding, wherein Lutzker reduced his invention to practice by the end of March 1976, but did not publicly disclose it until July 1980. During that time period, Lutzker developed molds and a recipe book to be sold along with his invention.  However, these items were not part of his patent application.  The Federal Circuit agreed that this evidence raised an inference of suppression or concealment, and provided evidence of intentional suppression "because of [Lutzker's] deliberate policy not to disclose his invention to the public until he [was] ready to go into commercial production."[19]

This is not the case before the Court.  The evidence shows that Rock River continually worked on the development of its LAR-8 rifle and sought patent protection within a reasonable

---

[17]*Id*. at 171:14-20; *id*. at 162:18-22.

[18]843 F.2d 1364 (Fed. Cir. 1988).

[19]*Id*. at 1368.

time after completing the invention. There is nothing to suggest that Rock River engaged in the type of conduct that the Federal Circuit found objectionable in *Lutzker*. Further, as will be discussed below, the Federal Circuit has "expressly distinguished *Lutzker* . . . from situations in which public disclosure occurred by bring the invention to market" because *Lutzker* did "not address—as is the case here—disclosure through commercialization."[20]

Plaintiffs further argue that public disclosure by bringing the invention to market is not applicable in cases of intentional suppression. The Court need not determine this issue because, as discussed above, Plaintiffs have failed to raise a genuine issue of material fact on the issue of intentional suppression.

>    2.    *Inference of Suppression or Concealment*

Plaintiffs further argue that the delay in Rock River filing its patent application raises an inference that Rock River suppressed or concealed the LAR-8 rifle. Plaintiffs further argue that Rock River's commercialization efforts do not excuse Rock River's alleged suppression or concealment.

"The failure to file a patent application, to describe the invention in a published document, or to use the invention publicly, within a reasonable time after first making the invention may constitute abandonment, suppression, or concealment."[21]   "[T]here is no particular length of delay that is *per se* unreasonable."[22]   "Mere delay, without more, is not sufficient to

---

[20]*Flex-Rest*, 455 F.3d at 1360.

[21]*Dow Chem.*, 267 F.3d at 1342 (citations omitted).

[22]*Checkpoint Sys., Inc. v. U.S. Int'l Trade Comm'n*, 54 F.3d 756, 761 (Fed. Cir. 1995).

establish suppression or concealment."[23]  Rather, "each case involving the issue of suppression or concealment must be considered on its own particular set of facts."[24]

The Court must first address a dispute between the parties as to whether Rock River's efforts to bring its invention to market should be considered in determining whether there is evidence to support an inference of suppression or concealment.  The Federal Circuit has made clear that such efforts should be considered.  The Federal Circuit has stated that "[o]ne way a prior inventor may avoid the disqualifying effect of § 102(g) is by promptly filing a patent application claiming the invention."[25]  However, "[f]iling a patent application is not the only way to bring the benefit of the knowledge of an invention to the public."[26]  Another way is to show "that the first inventor engaged in reasonable efforts to bring the invention to market."[27]

Plaintiffs argue that Rock River's efforts to bring its invention to market should not be considered here because Rock River chose to seek patent protection.  Plaintiffs argue that an inventor can either publicly disclose an invention or seek patent protection, but cannot do both. Plaintiffs argue that, since Rock River chose to file its own patent application, its efforts to bring the LAR-8 rifle to market cannot be considered.

---

[23] *Young v. Dworkin*, 489 F.2d 1277, 1281 (C.C.P.A. 1974).

[24] *Paulik*, 760 F.2d at 1275 (quotation marks and citation omitted).

[25] *Checkpoint*, 54 F.3d at 761.

[26] *Id*. at 763.

[27] *Id*. at 762; *see also Dow Chem. Co.*, 267 F.3d at 1343.

The problem with Plaintiffs' argument is that it runs contrary to Federal Circuit law.  The Court need look no further than *Flex-Rest* to dispel this claim.  In *Flex-Rest*, as here, the party challenging the patent both took steps to bring its invention to market and filed a patent application.[28]  It was of no concern to the *Flex-Rest* court that the challenger both filed a patent application and commercially disclosed its product.  Rather, the court focused on whether the invention had been disclosed publicly, regardless of the method.  This approach is consistent with the case law quoted above, demonstrating the filing a patent application is but one way to publicly disclose an invention.

Further, the plaintiff in *Flex-Rest* made the same argument that Plaintiffs make here, that this case is controlled by *Lutzker* and *Young*.  The court provided the following analysis:

> We disagree with Flex-Rest's contention that *Lutzker* and *Young* command a different result.  First, both *Lutzker* and *Young* address disclosing a prior invention only by filing a patent application; they do not address—as is the case here—disclosure through commercialization.  In an interference context, we have held that delayed filing due to commercialization efforts or improvements not reflected in the patent application are inexcusable.  However, we have expressly distinguished *Lutzker* and *Young* from situations in which public disclosure occurred by bringing the invention to market.  Therefore, the "reasonable steps to market" identified in *Dow Chemical* and *Checkpoint* are applicable here.[29]

---

[28]*Flex-Rest*, 455 F.3d at 1359 ("The record demonstrates that after reduction to practice, Steelcase moved almost immediately towards both filing a patent application and commercially disclosing the KBS at a trade show, actions which indicate an intent to make a public disclosure.").

[29]*Id*. at 1360.

The same conclusion is required here.  The evidence clearly shows that Rock River disclosed its invention by bringing it to market.  The fact that Rock River chose, as did the defendant in *Flex-Rest*, to also file a patent application, is of no moment.

*Checkpoint*, *Dow Chemical*, and *Flex-Rest* provide helpful analysis in determining what efforts are "reasonable" in a situation where public disclosure occurs by bringing an invention to market.  In *Checkpoint*, the Federal Circuit found a delay of four years between reduction to practice and commercialization was reasonable where the inventor took steps to bring the invention to market, including disclosing it to his employer, conducting further tests, purchasing supplies from vendors, and helping develop a system for mass production.[30]

In *Dow Chemical*, the Federal Circuit "held that a delay of two and one-half years between reduction to practice and the commercialization of an invention did not constitute a prima facie case of suppression or concealment where the first inventor made 'reasonable efforts to bring the invention to market.'"[31]  In that case, the inventor "actively and continuously took steps towards the commercialization of the [invention], including the procurement of financing to build a new production plant and the attention to safety considerations."[32]  The court noted that "[a] prior inventor is not required to take the fastest route to commercialization, but only to make 'reasonable efforts to bring the invention to market.'"[33]

---

[30]*Checkpoint*, 54 F.3d at 762.

[31]*Flex-Rest*, 455 F.3d at 1359 (quoting *Dow Chem.*, 267 F.3d at 1343).

[32]*Dow Chem.*, 267 F.3d at 1343.

[33]*Id*. (quoting *Checkpoint*, 54 F.3d at 762).

In *Flex-Rest*, the court found a six month delay between reduction of practice and disclosure to be reasonable because the defendant spent that time acquiring the necessary tooling for a part of the invention.[34]

In reviewing the facts of this case, the Court finds that Rock River's efforts to bring its LAR-8 rifle to market were reasonable and Plaintiffs have failed to present evidence creating a genuine issue of material fact to dispute this.  As set forth in detail above, Rock River worked continuously in the development of its invention.  During the delay between reduction to practice and commercialization, Rock River worked diligently to order, receive, and test the various components of the LAR-8 rifle to ensure not only a working product, but also alleviate any safety concerns.  These are the precise activities that the Federal Circuit in *Checkpoint*, *Dow Chemical*, and *Flex-Rest* have found to be reasonable.  While Plaintiffs argue that this could have been done more quickly, "[a] prior inventor is not required to take the fastest route to commercialization, but only make 'reasonable efforts to bring the invention to market.'"[35]  For all of these reasons, the Court finds that Plaintiffs have failed to provide evidence establishing a genuine issue of material fact as to whether Rock River abandoned, suppressed, or concealed the invention.

B.      EVIDENCE TO THE CONTRARY

Even if the Court were to find that Plaintiffs have presented evidence creating a genuine issue of material on the issue of suppression or concealment, the Court finds that Defendants have presented clear and convincing evidence to the contrary.

---

[34]*Flex-Rest*, 455 F.3d at 1359.

[35]*Dow Chem. Co.*, 267 F.2d at 1343 (quoting *Checkpoint*, 54 F.3d at 762).

15

IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions for Summary Judgment (Docket Nos. 98, 100, 107, and 165) are GRANTED.  It is further

ORDERED that Plaintiffs' Cross Motion for Summary Judgment (Docket No. 139) is DENIED.

The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiffs on the validity of claims 1, 3, 6, 7, 8, 10, 11, 18, 24, and 25 of the '900 Patent, and close this case forthwith.

DATED   January 18, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge